1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JULIA GUADALUPE GONZALEZ,              No.  2:19-cv-02234-KJN

12                 Plaintiff,               ORDER ON PARTIES' CROSS MOTIONS
                                            FOR SUMMARY JUDGMENT
13           v.
                                            (ECF Nos. 14, 17)
14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                   Defendant.
16

17          Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18   denying her application for Disability Insurance Benefits under Title II of the Social Security

19   Act.[1]  In her summary judgment motion, plaintiff contends the Administrative Law Judge erred in

20   formulating her residual functional capacity by improperly discounting certain medical evidence

21   and improperly rejecting plaintiff's subjective-symptom testimony.  Plaintiff also alleges the

22   Appeals Council improperly rejected evidence in its review of the ALJ's decision.  The

23   Commissioner opposed and filed a cross-motion for summary judgment.

24          For the reasons discussed below, the court DENIES plaintiff's motion for summary

25   judgment, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the

26

27   _____

     [1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule
28   302(c)(15).  Both parties consented to proceed before a United States Magistrate Judge, and the
     case was reassigned to the undersigned for all purposes.  (ECF Nos. 6, 8, 19.)

                                                 1

1   Commissioner.

2   **I.      BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**[2]

3              On December 6, 2016 plaintiff applied for Disability Insurance Benefits, alleging an onset

4   date of June 13, 2016.  (Administrative Transcript ("AT") 989-92.)  Plaintiff stated she was

5   disabled due to her multiple sclerosis, degenerative arthritis, acid reflux, anxiety disorder, and

6   depression disorder.  (AT 893-94.)  Plaintiff's application was denied initially and again upon

7   reconsideration.  (AT 892, 912.)  Plaintiff, still unrepresented at the time, sought review of those

8   denials with an Administrative Law Judge ("ALJ").  (AT 942-43.)  The ALJ held a hearing on

9   June 7, 2018, where plaintiff testified about her conditions and where a Vocational Expert ("VE")

10  testified regarding available jobs for someone with plaintiff's limitations.  (AT 866-91.)

11             On October 17, 2018, the ALJ issued a decision determining plaintiff was not disabled

12  from her onset date foreword.  (AT 125-37.)  As an initial matter, the ALJ found plaintiff met the

13  insured status requirements through December of 2021.  (AT 127.)  At step one, the ALJ

14  concluded plaintiff had not engaged in substantial gainful activity since her alleged onset date of

15  June 13, 2016.  (Id.)  At step two, the ALJ determined plaintiff had the following severe

16  impairments:  multiple sclerosis, obesity, anxiety disorder, and depression disorder.  (Id.)  At step

---

17  [2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social

18  Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to
    engage in any substantial gainful activity" due to "a medically determinable physical or mental

19  impairment. . . ." 42 U.S.C. § 423(d)(1)(a).  A parallel five-step sequential evaluation governs
    eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-76; Bowen v. Yuckert, 482 U.S.

20  137, 140-42 (1987).  The following summarizes the sequential evaluation:

21          **Step one**: Is the claimant engaging in substantial gainful activity?  If so, the
            claimant is found not disabled.  If not, proceed to step two.

22          **Step two**:  Does the claimant have a "severe" impairment?  If so, proceed to step
            three.  If not, then a finding of not disabled is appropriate.

23          **Step three**: Does the claimant's impairment or combination of impairments meet
            or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the

24          claimant is automatically determined disabled.  If not, proceed to step four.

            **Step four**: Is the claimant capable of performing past relevant work?  If so, the

25          claimant is not disabled.  If not, proceed to step five.

            **Step five**: Does the claimant have the residual functional capacity to perform any

26          other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

27  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in
    the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The

28  Commissioner bears the burden if the sequential evaluation process proceeds to step five.  (Id.)

three, the ALJ determined plaintiff's impairments did not meet nor medically equal the severity of an impairment listed in Appendix 1.  (Id., citing 20 C.F.R. Part 404, Subpart P, Appendix 1).  In doing so, the ALJ noted that plaintiff did not have any marked limitations in physical functioning, and only had moderate limitations in the four mental impairments categories listed in paragraph B, listing 12.04 and 12.06.  (AT 128-29.)

The ALJ determined plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with certain limitations:

> [Plaintiff can] stand/walk for two hours in an eight hour workday; frequently climb ramps/stairs; never climb ladders, ropes, or scaffolds; and occasionally balance; is limited to jobs where she is able to use a hand held assisted device at all times with standing and walking, but the bilateral upper extremities can be used to carry up to the exertional limits; must avoid concentrated exposure to hazards defined as operation of controlled dangerous machinery as well as unprotected heights; is limited to simple, routine, and repetitive task in jobs with low stress defined as occasional decision making or work setting changes; and can have occasionally public face-to-face interaction.

(AT 129-30, cleaned up.)  In fashioning this RFC, the ALJ stated he considered those of plaintiff's symptoms which were consistent with the medical evidence and opinions of the medical professionals.  (AT 130.)  Relevant here, the ALJ rejected some findings from plaintiff's treating physician Dr. Fung, who ascribed more restrictive physical limitations than the RFC.  (AT 133, 135.)  The ALJ also rejected the more severe aspects of plaintiff's subjective symptom testimony, including alleged physical inabilities.  (AT 130, 135.)  Based on the VE's testimony, the ALJ concluded that while plaintiff was unable to perform any past relevant work, there were numerous sedentary jobs existing in the national economy that she could perform.  (AT 135-36.)  Thus, the Commissioner determined plaintiff was not disabled for the relevant period.  (Id.)

Plaintiff requested the Appeals Council review the ALJ's decision, and with her appeal submitted additional evidence.  This new evidence included two new Work Status Reports by Dr. Fung, one of which was dated two days after the ALJ's decision was released.  (AT 1-7, 120-21, 143-865.)  The Appeals Council rejected some evidence as post-decision evidence, and found the remaining evidence would not have changed the outcome.  (AT 1-7, 986-88.)

Plaintiff then filed this action requesting judicial review of the ALJ's and Appeals

3

1  Council's decisions; and the parties filed cross-motions for summary judgment.  (ECF Nos. 1, 14,
2  17, 18.)

3  **II.      LEGAL STANDARD**

4          The court reviews the Commissioner's decision de novo, and should reverse "only if the
5  ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ
6  applied the wrong legal standard."  Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017).
7  Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such
8  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
9  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "The ALJ is responsible for
10  determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."
11  (Id.)  The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than
12  one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further,
13  the court may not reverse the ALJ's decision on account of harmless error.  Buck, 869 F.3d at
14  1048.

15  **III.     ISSUES PRESENTED**

16          Plaintiff raises three issues in her motion for summary judgment:  (A) the ALJ prescribed
17  a faulty RFC by failing to consider certain medical evidence and medical opinions of Dr. Fung;
18  (B) the ALJ did not provide clear and convincing reasons for rejecting plaintiff's testimony, in
19  that he presented "a skewed view of her activities"; and (C) the Appeals Council improperly
20  denied plaintiff's request for review and incorrectly rejected the additional evidence.
21  Accordingly, plaintiff seeks a remand for additional proceedings.  (ECF Nos. 14, 18.)

22          The Commissioner disagrees, arguing the ALJ properly determined the RFC, articulated
23  legally sufficient reasons for rejecting Dr. Fung's more extreme opinions, and appropriately
24  considered plaintiff's subjective symptoms.  (ECF No. 17 at 16.)  Additionally, the Commissioner
25  argues the evidence plaintiff submitted to the Appeals Council fails to rebut the ALJ's findings,
26  and is otherwise consistent with the overall record.  (Id. at 17.)  Thus, the Commissioner contends
27  the decision as a whole is supported by substantial evidence, and should result in affirmance.
28  (Id.)

4

1    **IV.**    <u>**DISCUSSION**</u>

2     **A. The ALJ's Interpretation of the Medical Evidence and Opinions**

3      <u>Legal Standard</u>

4      Generally speaking, the ALJ is required to consider a host of factors in deciding the

5 weight given to any medical opinion, including whether the physician examined the claimant, the

6 length of the physician's treatment of claimant, the frequency of examination, the nature and

7 extent of the treatment relationship, supportability of the physician's findings, consistency with

8 the record, the physician's specialization, and any other factors deemed relevant.  20 C.F.R.

9 § 404.1527(c)(1)-(6).

10      In order to evaluate whether an ALJ properly rejected a medical opinion, in addition to

11 considering its source, the court considers whether: (1) contradictory opinions are in the record;

12 and (2) clinical findings support the opinions.  <u>Lester v. Chater</u>, 81 F.3d 821, 831 (9th Cir. 1995).

13 To reject the uncontradicted opinion of a treating or examining doctor, the ALJ must provide

14 "clear and convincing reasons that are supported by substantial evidence."  <u>Ryan v. Comm'r</u>, 528

15 F.3d 1194, 1198 (9th Cir. 2008).  Conversely, a contradicted opinion may be rejected for

16 "specific and legitimate" reasons.  <u>Lester</u>, 81 F.3d at 830.  An ALJ provides specific and

17 legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting

18 clinical evidence, stating [an] interpretation thereof, and making findings."  <u>Magallanes v.</u>

19 <u>Bowen</u>, 881 F.2d 747, 751 (9th Cir. 2011).

20      Even when the evidence is susceptible to more than one rational interpretation, a court

21 must uphold the ALJ's findings if are supported by inferences reasonably drawn from the record.

22 <u>Tommasetti</u>, 533 F.3d at 1038 (citing <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012)

23 (superseded by regulation on other grounds)).  A reviewing court will not set aside the denial of a

24 disability claim unless the Commissioner's findings "are not supported by substantial evidence in

25 the record as a whole."  <u>Molina</u>, 674 F.3d at 1121 (quoting <u>Stone v. Heckler</u>, 761 F.2d 530, 531

26 (9th Cir. 1985)).  It is the ALJ's job to formulate the RFC, and a physician's opinion need not

27 adopted verbatim.  20 C.F.R. § 416.946(c); <u>see, generally</u>, <u>Magallanes</u>, 881 F.2d at 753.

28 ///

1        Analysis

2        Here, plaintiff is mainly concerned with the ALJ's rejection of treating neurologist Dr.

3    Fung's opinions, in favor of examiner Dr. Sharma and non-examiners Drs. Huynh and Cepeda.

4    (ECF No. 14 at 13-14.)  In sum, plaintiff notes that Dr. Fung found different restrictions in

5    plaintiff's ability to stand, walk, sit, use stairs, bend, squat/kneel, use her right hand, ability to

6    grip, drive, and use a keyboard/mouse.  (AT 131-33.)  Thus, under Magallanes, the ALJ was

7    required to set out a thorough summary of the facts and conflicting evidence, and interpret this

8    evidence, and craft an RFC so the court can review this case.  The ALJ did so here.

9        Contrary to plaintiff's contentions, the ALJ did not reject all of Dr. Fung's opinions and

10   limitations.  Plaintiff first mentions that the ALJ combined standing and walking in his

11   assessment, while Dr. Fung did not.  (ECF No. 14 at 13-14.)  However, the ALJ's assessment of

12   plaintiff's ability to stand and walk is in fact more restrictive than Dr. Fung's—who did not

13   include the need for a hand held assistive device in his Work Status Reports (whereas the ALJ did

14   include such limitation).  (AT 121, 675, 2039, 2066, 2222); see, e.g., Montalbo v. Colvin, 231 F.

15   Supp. 3d 846, 861 n.10 (D. Haw. 2017) (finding harmless when the ALJ adopted a more

16   restrictive RFC than the one recommended by plaintiff's physician).  Second, all four physicians

17   opined that plaintiff could stand or walk for two hours in an eight-hour workday, which the ALJ

18   incorporated into the RFC.  (AT 133, 905, 924 2063, 2066.)  Dr. Fung noted in an October 19,

19   2018 report that plaintiff's walking limitations were reduced to "not at all."  (ECF No. 14 at 21;

20   AT 121.)  However, this limitation was primarily based upon plaintiff's subjective symptoms,

21   which can be rejected if the subjective symptoms are properly rejected (see Sections B and C,

22   below).  Bray v. Comm'r., 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ may discount a treating

23   physician's findings when based on claimant's rejected subjective symptoms).  In addition, Dr.

24   Fung opined that plaintiff could lift/carry a maximum of 20 pounds.  (AT 2066.) This limitation is

25   incorporated into the standard for light work, as defined in 20 C.F.R. § 404.1567(b), so the ALJ's

26   adoption of "light work" is specific and legitimate.  Magallanes, 881 F.2d at 751.

27       Plaintiff argues Dr. Fung called for a 50% limitation in sitting (i.e. 4 hours), but the ALJ

28   assigned an RFC allowing for 6 hours of sitting.  However, it is clear from the analysis that the

1   ALJ applied more weight to the opinions of Dr. Sharma, Dr. Huynh, and Dr. Cepeda, whose

2   opinions matched the ALJ's six-hour finding.  (AT 130, 133); Magallanes, 881 F.2d at 755 (the

3   ALJ need not recite the magic words, "I reject [a doctor's] opinion … because …").  The same

4   holds true for the ALJ's adoption of the three physicians' opinions (over Dr. Fung) in regards to

5   plaintiff's use of stairs, ability to bend, squat/kneel, right hand motions, and ability to grip.  (Id.)

6   Plaintiff contends that the ALJ's reliance on Dr. Sharma is misplaced because his opinion

7   regarding plaintiff's gripping limitation is inconsistent with his objective findings.  (ECF No. 14

8   at 16.)  However, Dr. Sharma's opinion, albeit less restrictive than Dr. Fung's, did in fact assign

9   limitations which are consistent with his overall findings of weakness in both upper and lower

10   extremities.  (AT 2062-063); Molina, 674 F.3d at 1121 ("Even when an agency explains its

11   decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be

12   discerned,") (quoting Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 497 (2004)).

13        As to the ALJ's apparent failure to address plaintiff's inability to drive or use a keyboard,

14   the court finds that the jobs testified to by the VE to not require her to do these things in those

15   positions.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding

16   harmless ALJ's omission from the RFC certain limitations because ascribed jobs did not require

17   more than what plaintiff could do).  Arguably, plaintiff may need to drive to and from her place

18   of work; however, plaintiff testified to her ability to drive short distances.  (AT 879.)

19        Finally, plaintiff notes the VE opined that if plaintiff had to frequently alternate positions

20   between sitting and standing and had a handling limitation, all work would be precluded.  (ECF

21   No. 14 at 16.)  The court recognizes that the VE did state such an opinion; however, the ALJ

22   reasonably found plaintiff retained a normal range of motion in the upper and lower extremities

23   and therefore did not prescribe such limiting restrictions.  (AT 135, 889.)  Edlund, 253 F.3d at

24   1156 ("The ALJ is responsible for . . . resolving conflicts in medical testimony . . . .").

25        Ultimately, the court finds the ALJ's extensive summary of the record, discussion of the

26   medical opinions, and findings regarding those opinions' consistency with the bulk record

27   satisfies the ALJ's duty.  Molina, 674 F.3d at 1121.  It is proper for a reviewing court to draw

28   rational inferences from the paragraphs discussing contradictory opinions, if those inferences are

1    there to be drawn.  Magallanes, 881 F.2d at 755.  Plaintiff's attempts here appear to be a request

2    for the court to reweigh the medical evidence, which the court cannot do.  Tommasetti, 533 F.3d

3    at 1038 (the court will uphold the ALJ's conclusion where the evidence is susceptible to more

4    than one rational interpretation).  For these reasons, the court rejects plaintiff's arguments

5    concerning the ALJ's interpretation of the medical evidence in formulating the RFC.

6        **B. Plaintiff's Subjective-Symptom Testimony**

7        Legal Standard

8        In evaluating a claimant's report of his or her symptoms, the Ninth Circuit has set forth

9    the following two-step analysis:

10        First, the ALJ must determine whether the claimant has presented objective
         medical evidence of an underlying impairment which could reasonably be
11        expected to produce the pain or other symptoms alleged.  In this analysis, the
         claimant is not required to show that her impairment could reasonably be
12        expected to cause the severity of the symptom she has alleged; she need only
         show that it could reasonably have caused some degree of the symptom.  Nor
13        must a claimant produce objective medical evidence of the pain or fatigue itself,
         or the severity thereof.
14

15        If the claimant satisfies the first step of this analysis, and there is no evidence of
         malingering, the ALJ can reject the claimant's testimony about the severity of her
16        symptoms only by offering specific, clear and convincing reasons for doing so.
         This is not an easy requirement to meet: the clear and convincing standard is the
17        most demanding required in Social Security cases.

18

19    Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995,

20    1014-15 (9th Cir. 2014)).

21        The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony

22    must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not

23    arbitrarily discredit a claimant's testimony."  Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th

24    Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)).  This analysis

25    requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be

26    credible and . . . explain what evidence undermines that testimony."  Treichler v. Comm'r, 775

27    F.3d 1090, 1102 (9th Cir. 2014).  Examples of "specific, clear and convincing reasons" for

28

1   discounting or rejecting a claimant's subjective symptom testimony include: the effectiveness of

2   or noncompliance with a prescribed regime of medical treatment, inconsistencies between a

3   claimant's testimony and his or her conduct (including daily activities), and whether the alleged

4   symptoms are consistent with the medical evidence of record.  See Tommasetti, 533 F.3d at 1040;

5   Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007).  A lack of corroborating, objective

6   medical evidence alone is insufficient grounds to discount a claimant's subjective symptoms;

7   however, it is a factor the ALJ may consider.  20 C.F.R § 404.1529(c)(2); Rollins v. Massanari,

8   261 F.3d 853, 857 (9th Cir. 2001).  Broadly speaking, a claimant's statements of subjective

9   symptoms alone is insufficient grounds to establish disability.  20 C.F.R § 404.1529(a); Treichler,

10   775 F.3d at 1106.

11          Analysis

12          Plaintiff argues the ALJ misconstrued statements she made to her physicians and to the

13   ALJ at the hearing.  Thus, plaintiff argues the ALJ failed to provide clear and convincing reasons

14   for discounting her subjective symptoms.  (ECF No. 14 at 16-20.)  Specifically, plaintiff points to

15   her testimony saying that she has extreme difficulties in walking, balancing, remembering, and

16   that she can only sit and stand for short periods of time and must alternate between the two.  (Id.

17   at 18-19.)  Plaintiff also asserted that she can only drive locally, cannot shop or go out alone,

18   needs assistance managing money, and that she struggles in attending to her personal hygiene,

19   taking care of her children and husband, and performing household chores such as doing the

20   dishes, vacuuming, and preparing meals.  (Id.)  Thus, the court turns to the ALJ's discussion of

21   plaintiff's numerous statements.

22          Here, the ALJ first summarized plaintiff's subjective symptom testimony regarding her

23   daily activities, as provided from plaintiff's own Function Report and hearing testimony.  (AT

24   130.)  The ALJ began his analysis with the oft-repeated statement that while plaintiff's testimony

25   generally aligned with the medical evidence, her "statements concerning the intensity, persistence

26   and limiting effects of these symptoms are not entirely consistent with the medical evidence and

27   other evidence in the record…"  (AT 130.)  Next, the ALJ extensively reviewed the objective

28   medical evidence and each physicians' opinions.  (AT 131-35.)  The ALJ then stated two reasons

9

1  why plaintiff's symptoms were not as severe as she alleged.  First, the ALJ noted the medical

2  evidence did not support the severity of plaintiff's allegations.  (AT 135.)  Second, the ALJ noted

3  some of plaintiff's daily activities—including her ability to drive, care for her children and legally

4  blind husband, perform light household chores, and grocery shop—undermined her claim of

5  limited physical mobility and functioning.  (AT 132-35.)  The question is whether the ALJ's

6  description of plaintiff's symptom testimony and rationale for rejecting it meets the Ninth

7  Circuit's clear and convincing standard.  The court finds that it does.

8       The ALJ primarily relied on a lack of corroborating objective medical evidence to support

9  his decision to discount plaintiff's testimony that she could not work because of her impairments.

10  (AT 128-35.)  Contrary to plaintiff's assertions of extreme limitations in her ability to sit, stand,

11  walk, and balance, the ALJ noted that "the record [did] not reflect that the claimant has

12  disorganization of motor function in two extremities, resulting in an extreme limitation in her

13  ability to stand up from a seated position, balance while standing or walking, or use the upper

14  extremities."  (AT 128.)  The ALJ also noted that plaintiff's treating provider had in fact found

15  plaintiff able to stand and walk occasionally.  (AT 128, 1945-2048, 2060-66, 2089-215, 2219-23.)

16  Plaintiff also points to her testimony regarding her difficulty in remembering.  However, the ALJ

17  found plaintiff's "recent treatment notes reflect intact recent and remote memory," and that she

18  displayed an ability to remember things during her mental examination.  (AT 132, 134, 2049-58.)

19  Further, the ALJ rejected plaintiff's testimony concerning her inability to bag and load groceries

20  or pick up her young daughter based on the medical record, as a 20 pound limitation was adopted

21  into the RFC based on the four physicians' opinions.  (AT 130, 133; see also Section A, above).

22  The ALJ also noted that the objective medical evidence showed a normal range of motion in the

23  upper and lower extremities (despite decreased strength and an ability to walk with an assistive

24  walking device), which contradicted plaintiff's testimony of complete debilitating impairments.

25  See, e.g., Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999) (finding ALJ provided clear and

26  convincing reasons for rejecting claimant's subjective symptom testimony by citing, among other

27  things, inconsistencies between claimant's testimony and medical evidence).

28       Even though a lack of corroborating medical evidence is not enough (by itself) to

disregard a plaintiff's subjective symptoms, the ALJ also found inconsistencies in plaintiff's reported daily activities. Specifically, the ALJ noted plaintiff's testimony regarding her standing and balance issues (re: her inability to shower without having to lean against the wall, or her inability to quickly complete household chores, prepare meals on her feet, or grocery shop without assistance), but found that testimony contradicted by her continued ability to perform chores such as grocery shop and prepare meals while sitting—which implicates the ability to maintain balance for an extended period of time.[3] (AT 128.) The ALJ noted plaintiff's testimony that she could not drive or go out alone, but also found she had stated she drove her children to and from school on a daily basis and herself to an evaluation. (AT 132); see Molina 674 F.3d at 1113 (rejecting plaintiff's testimony because it was inconsistent with her daily activities of walking her grandchildren to and from school, attending church, going shopping, and taking walks); see also Morgan, 169 F.3d at 600 (rejecting plaintiff's subjective testimony because it conflicted with his daily activities showing an "ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child."). The ALJ noted plaintiff's testimony that she experienced tremors in her arms and hands, but plaintiff also testified that she can (with difficulty) use her hands to prepare meals and complete other chores. (AT 131, 135, 875-76.) The ALJ's descriptions are sufficiently clear, accurate, and convincing. See Molina, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (citing Valentine v. Comm'r, 574 F.3d 685, 693 (9th Cir. 2009)).

Overall, the ALJ's findings on plaintiff's subjective symptom testimony are sufficiently consistent with the record. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) ("if the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing") (citing Morgan, 169 F.3d at 599-600 (where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld)). For these reasons, the undersigned finds the ALJ did not fail

---

[3] Further, plaintiff's RFC allowed for the use of a handheld assistive device at all times, and the VE found she could do multiple sedentary jobs. (AT 136); 20 C.F.R. § 404.1567(b).

1   in his duty to provide clear and convincing reasons for discounting plaintiff's subjective-symptom

2   testimony under Ninth Circuit precedent.  Treichler, 775 F.3d at 1102.

3   **C. Appeals Council Decision to Deny Review**

4   Federal courts "do not have jurisdiction to review a decision of the Appeals Council

5   denying a request for review of an ALJ's decision, because the Appeals Council decision is a

6   non-final agency action."  Brewes v. Comm'r, 682 F.3d 1157, 1161-62 (9th Cir. 2012).  Once the

7   Appeals Council denies review, the ALJ's decision becomes the final decision of the

8   Commissioner.  (Id.)  When evidence is given to the Appeals Council for the first time, and such

9   evidence is considered in denying review of the ALJ's decision, that evidence becomes part of the

10   administrative record, and the reviewing court must consider it in determining whether the

11   decision was supported by substantial evidence.  (Id. at 1159-60.)  However, only new and

12   material evidence relating to the period on or before the date of the ALJ decision should be

13   considered.  20 C.F.R. § 404.970(b); Taylor v. Comm'r, 659 F.3d 1228, 1233 (9th Cir. 2011).

14   Remand is appropriate if the new evidence creates a reasonable possibility that it would have

15   changed the outcome of the ALJ's decision.  Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir.

16   2001); Booz v. Sec. of Health and Human Servs., 734 F.2d 1378, 1380 (9th Cir. 1984).

17   When plaintiff requested review from the Appeals Council, she submitted additional

18   evidence consisting of medical examinations and reports conducted before and after the ALJ's

19   decision.  (AT 2.)  The Appeals Council declined to review the records from March 15, 2019, and

20   from October 19, 2018, through January 15, 2019, because those records did not relate to the

21   period before the ALJ's decision (issued on October 17, 2018).  (Id.)  However, the Appeals

22   Council seemingly reviewed the additional evidence dated February 12, 2018, through October

23   17, 2018, August 16, 2018, through December 21, 2018, and one report from October 19, 2018,

24   that was drafted before the ALJ's decision.  (Id.)  The Appeals Council found the reviewed

25   evidence did "not show a reasonable probability that it would change the outcome of the

26   decision."  (Id.)  Plaintiff contends the Appeals Council erred in the treatment of this evidence.

27   The additional evidence which plaintiff is mainly concerned with are two reports by Dr.

28   Fung, one dated June 7, 2018, and another dated October 19, 2018.  (ECF No. 14 at 20-22.)

1    Plaintiff contends the Appeals Council did not review the October 19, 2018 report "on the
2    mistaken belief that it did not relate to the period before the date of the ALJ's decision."  (ECF
3    No. 14 at 22.)  However, contrary to plaintiff's contention, the Appeals Council in fact reviewed
4    the report as it is listed among the documents reviewed.  (AT 2.)  Plaintiff concedes that there is
5    only one changed work limitation in the October 19, 2018 report as compared to the rest of Dr.
6    Fung's Work Status Reports, which is that plaintiff's walking limitations were reduced to "not at
7    all."  (ECF No. 14 at 21; AT 121.)  Regardless, this limitation was primarily based upon
8    plaintiff's subjective symptoms.  (See AT 846-65.)  Information contained in a physician's report
9    can be rejected if primarily based on a patient's symptoms (which the ALJ also rejects).  Bray,
10   554 F.3d at 1228.  Similarly, the June 7, 2018 report does not change the outcome because it
11   merely mirrors the previous reports and does not provide any new limitations.  (Cf. AT 2066,
12   2222 with AT 675.)  Therefore, the additional evidence submitted by plaintiff generated prior to
13   the decision does not show a reasonable possibility of a different outcome, and reports generated
14   after are irrelevant to this proceeding.  Taylor, 659 F.3d at 1228; see also, e.g., Roberson v.
15   Astrue, 481 F.3d 1020, 1026 (8th Cir. 2007) (finding medical records considering claimant's
16   condition after the ALJ's decision to be immaterial).

17   **V.    CONCLUSION**

18         In sum, the court rejects plaintiff's challenges, and otherwise finds the ALJ's decision free
19   from prejudicial legal error and supported by substantial evidence in the record as a whole.  Buck,
20   869 F.3d at 1048.  Accordingly, IT IS HEREBY ORDERED that:

21         1.    Plaintiff's motion for summary judgment (ECF No. 14) is DENIED;

22         2.    The Commissioner's motion for summary judgment (ECF No. 17) is GRANTED;

23         3.    The final decision of the Commissioner is AFFIRMED; and

24         4.    The Clerk of Court is directed to issue judgment in the Commissioner's favor and

25               CLOSE this case.

26   Dated:  February 16, 2021

27
     gonz.2234
28

                                         KENDALL J. NEWMAN
                                         UNITED STATES MAGISTRATE JUDGE

                                              1